UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRANDON DILLER, individually and as the representative of a class of similarly-situated persons,<br><br>       Plaintiff,<br><br>   v.<br><br>EYEMED VISION CARE, LLC,<br><br>       Defendant. | Case No. 20-cv-01117<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

### INTRODUCTION

1.     Plaintiff, Brandon Diller ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action complaint against defendant, Eyemed Vision Care, LLC ("Defendant" or "Eyemed"), to stop Defendant's practice of sending unsolicited text message calls to cellular phones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and to recover statutory damages and other relief for all persons injured by Defendant's conduct. Plaintiff's allegations are based on information and belief and the investigation of his counsel, except those pertaining to his own actions, which are based on personal knowledge.

### NATURE OF THE CASE

2.     Plaintiff brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3.    The TCPA was enacted in response to widespread public outrage concerning the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

4.    The TCPA is designed to protect consumer privacy by prohibiting, among other things, autodialed calls to cellular telephone numbers without first receiving the "prior express consent" of the called party, as well as autodialed telemarketing calls to cellular telephone numbers initiated without the "prior express written consent" of the called party. *See In re Rules and Regulations Implementing the TCPA of 1991*, 27 FCC Rcd. 1830, 1844 (2012); 47 C.F.R. §§ 64.1200 (a) (1) (iii), (f) (1) (12).

5.    Plaintiff is a private individual residing in Plainfield, Illinois.

6.    Defendant Eyemed describes itself as a "the fastest growing vision benefits company in the U.S., [which] is dedicated to helping members achieve clear, healthy vision by giving them easy access to a diverse and expansive network of providers across the U.S. including independent eye doctors and national/regional retail setting providers like LensCrafters, Pearle Vision and Target Optical. EyeMed's client family is over 18,000 strong and counts more than 55 million funded benefit members." https://eyemed.com/en-us/about-us (last visited December 17, 2019).

7.    Also, "Eyemed's text messages are delivered by Relay Health, a platform used by many leading healthcare companies and insurance providers."

https://eyemed.com/en-us/blog/everyday-life-culture/reasons-why-benefits-program-texting-is-your-friend-17278

8.     This case challenges Defendant's practice sending autodialed unsolicited text message calls to cellular telephone numbers without first obtaining the recipient's prior express consent, as well as initiating autodialed telemarketing text messages to cellular telephone numbers without first receiving the recipient's prior express *written* consent, as required by the TCPA. *See* 47 C.F.R. § 64.1200 (a) (1) (iii), (2), (f) (8) (i).

9.     On June 26, 2019, July 17, 2019, August 6, 2019, September 4, 2019, October 10, 2019, and November 7, 2019, Defendant initiated autodialed text messages to Plaintiff's cellular phone at (XXX) XXX-8062 ("Plaintiff's Phone Number").

10.     At no time prior to Defendant's first contact, and at no time after, did Plaintiff give express consent of any kind to receive autodialed phone calls on his cellular phone from Defendant.

11.     Each time Defendant attempted to contact Plaintiff, Defendant utilized an "automatic telephone dialing system" ("ATDS").

12.     Plaintiff seeks class-wide relief against Defendant for violating the Telephone Consumer Protection Act, 47 U.S.C. § 227. A class action is the best means of obtaining redress for Defendant's illegal text messages to cellular phone numbers and/or illegal telemarketing text message calls to cellular phone numbers

and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

13. Defendant's practice caused actual harm to Plaintiff and the other members of the Classes in several ways, including temporarily using their cellular phones and tying up their lines, invading their privacy, causing wear and tear on their cellular phones, consuming battery life, and causing some of them to be charged for calls they did not want to receive. Moreover, these calls injured Plaintiff and the Classes because they were frustrating, obnoxious, annoying, and a nuisance, and disturbed their solitude.

## JURISDICTION AND VENUE

14. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the TCPA, a federal statute. 47. U.S.C. § 227 (b); *Mims v. Arrow Fin. Servs.*, 132 S. Ct. 740 (2012).

15. Venue is proper, pursuant to 28 U.S.C. § 1391 (b) (2), because Plaintiff resides in this district, a significant and substantial portion of the events at issue took place here, and Defendant conducts business in this district.

## PARTIES

16. Plaintiff is an individual citizen and resident of the State of Illinois residing in Plainfield, Illinois.

17. Defendant, Eyemed Vision Care, LLC, is a Delaware corporation whose principal place of business is based and located in Mason, Ohio.

4

18. Defendant is, and at all times mentioned herein was, a corporation and a "person," as defined by 47 U.S.C. § 153 (39).

19. Defendant boasts that it "is one of the largest vision benefits" companies in the United States which "serves over 55 million funded members."[1]

## BACKGROUND AND ENFORCEMENT OF THE TCPA

20. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry and protect consumers of telephone services. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2 (5) (1991) (codified at 47 U.S.C. § 227).

21. When Congress enacted the TCPA in 1991, it found that telemarketers were calling 18 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶ 8 (2003) ("2003 Order"). By 2003, telemarketers were calling 104 million Americans every day, assisted by the proliferation of new and more powerful autodialing technology. *Id.*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

22. The problems Congress identified when it enacted the TCPA have only grown worse in recent years. The FCC has emphasized that action must be taken to "stop the scourge of illegal robocalls" because "U.S. consumers received approximately 2.4 billion robocalls per month in 2016." *See The FCC's Push to*

---

[1] https://eyemed.com/resource/blob/15652/ecebd9affbecddb57a6d872d1078f7b6/eyemed-fast-facts-fn-0719-data.pdf) (last visited January 9, 2020).

*Combat Robocalls & Spoofing*, FCC, https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing (last visited May 12, 2019).

### THE TCPA PROHIBITS
### AUTOMATED CALLS TO CELLULAR PHONES

23. The TCPA prohibits all persons and entities from "initiat[ing] any telephone call . . . using an automated telephone dialing system . . . to any telephone number assigned to . . . a cellular telephone service" without first obtaining the recipient's express consent. 47 C.F.R. § 64.1200 (a) (1) (iii).

24. The TCPA also prohibits any person within the United States from initiating any telemarketing call using an automated telephone dialing system to a cellular telephone number without first obtaining the recipient's express *written* consent. *See In re Rules and Regulations Implementing the TCPA of 1991*, 27 FCC Rcd. 1830, 1844 (2012); 47 C.F.R. § 64.1200 (f) (1), (12).

25. "Prior express written consent" means:

> an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

47 C.F.R. § 64.1200 (f) (8).

26. The agreement in writing:

> shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such

6

an agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. § 64.1200 (f) (8) (i) (A).

27.    According to the FCC, "[t]he term seller means the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200 (f) (9).

28.    "The term advertisement means <u>any</u> material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200 (f) (1) (emphasis added).

29.    "The term telemarketer means the person or entity that initiates a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200 (f) (11).

30.    "The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200 (f) (12).

## FACTUAL BACKGROUND

### Defendant's Unlawful Text Messages to
### Plaintiff and the other Class Members

31.    Plaintiff is, and at all times mentioned herein was, the subscriber of his cellular telephone number ending in 8062 (the "8062 Number").

7

32.     The 8062 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227 (b) (1) (A) (iii).

33.     Defendant devised and implemented a campaign marketing strategy that includes the transmission of text messages through the use of an automatic telephone dialing system.

34.     Short Message Service ("SMS"), more commonly known as "text messaging," is a popular means for communicating among cellular/wireless subscribers ("cellular" or "wireless" phones). SMS messages are directed to a wireless device using the telephone number assigned to the device. When an SMS message is successfully made, the recipient's wireless phone rings, alerting him or her that a message is being received. As wireless telephones are inherently mobile and are frequently carried on their owner's person, the called party may receive SMS messages virtually anywhere in the world.

35.     The most common form of texting is person-to-person messaging, but text messages may also be used by automated systems to facilitate the ordering of products and services from cellular phones or for participating in contests or other marketing programs.

36.     Text messages use the technology (cellular phones) owned and paid for by the recipients, who often incur a charge for each incoming text message regardless of whether the message was authorized.

8

37. On about June 26, 2019, July 17, 2019, August 6, 2019, September 4, 2019, October 10, 2019, November 7, 2019 and January 7, 2020, Defendant transmitted or caused to be transmitted several text messages to the 8062 Number.

38. For example, on about August 6, 2019, Defendant transmitted or caused to be transmitted the following text message to the 8062 Number:

> You have a new vision discount waiting to be used. Tap for info. http://eyemedwire.com/r/Er739cc09 Text help or stop. Msg&DataRatesMayApply. *See* Exhibit A.

39. The source of the above SMS message was identified as "73529".

40. On about September 4, 2019, Defendant also transmitted or caused to be transmitted the following text message to the 8062 Number:

> You have a new message about your EyeMed vision benefits. Tap for details. http://eyemedwire.com/r/rV3fb8a853 Text help or stop. Msg&DataRatesMayApply. *See* Exhibit A.

41. The source of the above SMS message was identified as "73529".

42. On about October 10, 2019, Defendant also transmitted or caused to be transmitted the following text message to the 8062 Number:

> You have a new message from EyeMed. Tap for details. http://eyemedwire.com/r/OY7c9c153b Text help or stop. Msg&DataRatesMayApply. *See* Exhibit A.

43. The source of the above SMS message was identified as "73529".

44. On about November 7, 2019, Defendant also transmitted or caused to be transmitted the following text message to the 8062 Number:

> You have new vision savings ready to be used. Tap for details. http://eyemedwire.com/r/Kt31d894de Text help or stop. Msg&DataRatesMayApply. *See* Exhibit A.

45.     The source of the above SMS message was identified as "73529".

46.     On about January 7, 2020, Defendant also transmitted or caused to be transmitted the following text message to the 8062 Number:

> You have a new wellness message from EyeMed. Tap for details. http://eyemedwire.com/r/vd69a6e4c9  Text help or stop. Msg&DataRatesMayApply. *See* <u>Exhibit B</u>.

47.     The source of the above SMS message was identified as "73529".

48.     On about January 9, 2020, Defendant also transmitted or caused to be transmitted the following text message to the 8062 Number:

> You have a new wellness message from EyeMed. Tap for details. http://eyemedwire.com/r/CR6fc063f1  Text help or stop. Msg&DataRatesMayApply. *See* <u>Exhibit B</u>.

49.     The "details" within the text messages informed text recipients about "a new vision discount waiting to be used" or "EyeMed vision benefits" or "new vision savings ready to be used" or simply "a new message" or a "new wellness message." *See* <u>Exhibits A and B</u>.

50.     The contents of the "details" available if a recipient "tapped" the web links embedded in the text messages varied. For example, one stated:

> Start the school year off right with clear vision. Kids ages 18 and under get free lenses with a complete pair purchase of glasses at Pearle Vision. Visit a Perle Vision EyeCare Center near you to redeem.
>
> *Valid for children 18 and under. Free single vision polycarbonate lenses with complete pair (frames and lenses) purchase. Valid prescription required. Cannot be combined with any vision care or insurance plans/benefits, any store offer or discount. Not valid on previous purchases, contact lenses, accessories, readers, or non-prescription sunglasses. Discount off tag price. Savings applied to lenses. Valid at participating U.S. locations. Taxes not included. Void where prohibited. Some restrictions may apply. See store for

10

details. Offer ends 9/30/2019. Corporate Discount Code: 9330. ©2019 Pearle Vision. All Rights Reserved. *See* <u>Exhibit C</u>.

51.     In another example, the "details" stated:

EyeMed's mission is to help our 55 million+ members see life more clearly.

Along with that mission, we believe we have a responsibility to help those who don't have easy access to the kind of eye care you get with your EyeMed vision benefits.

That's why today we're joining our partners in a worldwide day of awareness focused on blindness and vision impairment.

Learn more about how you can join us – and OneSight – to help the world see more clearly. *See* <u>Exhibit D</u>.

52.     In a third example, the "details" stated:

Log In

Please enter your password to access your secure EyeMed message.

Log In

*Mobile Number

*Password

*See* <u>Exhibit E</u>.

53.     In a fourth example, the "details" stated:

Provider Locator

Let's focus on what works best for you.

Enter the information that fits your network and location.

What will I see?

You will see a variety of providers and where they are located.

However, not all providers participate in every plan.

11

If you are not enrolled in an EyeMed plan, please keep in mind your actual network may vary from what appears in our locator.

If you are an EyeMed member, you can <u>log in</u> to access the exact list of available providers. Even if a provider is displayed, we recommend you call ahead to confirm the provider accepts your EyeMed plan.

Begin your search

Zip Code or Use my Location

Advantage

What else is important?

Get results   Advanced Search

*See* <u>Exhibit F</u>.

54.     The source of the above messages, "73529" is SMS short code leased by the Defendant or the Defendant's agent(s) or affiliate(s), and are used for operating the Defendant's text message marketing program.

55.     The short code "73529" is assigned to the Relay Network. https://usshortcodedirectory.com/directory/short-code-73529/ ("73529 is a common short code (CSC), currently being used by Relay Network. The dedicated short code 73529, is registered in the United States with the CSCA, and is being used by Relay Network.") (last visited December 19, 2019).

56.     Plaintiff and the Class members did not give prior express consent, written or otherwise, for Defendant to send text messages to their wireless phones.

57.     Plaintiff did not provide the 8062 Number to Defendant.

58.     Plaintiff never requested the Defendant to send him text messages to the 8062 Number.

59.     Defendant sent, or had sent on their behalf, the same or substantially the same text messages *en masse* to thousands of wireless telephone numbers.

60.     Defendant sent these text messages to Plaintiff and the Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

61.     Under the TCPA, it is unlawful to send SMS or "text" messages using an automatic telephone dialing system, as defined by the TCPA, to wireless telephones without the recipient's prior express consent.

62.     Under the TCPA, the Federal Communications Commission ("FCC") has the authority to issue rules and regulations for the implementation of the TCPA.

63.     The FCC issued a Declaratory Ruling that acknowledged the "costly" and "particularly intrusive" nature of unwanted text messages, stating, "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission."[2]

64.     Through Defendant's conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

---

[2]     *See* In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling and Order, CG Docket No. 02-278, ¶1 (FCC July 10, 2015).

65. Plaintiff was personally affected by Defendant's conduct because Plaintiff was frustrated and distressed that Defendant interrupted Plaintiff with unwanted solicitation text messages using an ATDS.

66. Defendant's text messages forced Plaintiff and other similarly situated class members to live without the utility of their cellular phones by occupying their cellular phone with one or more unwanted calls, causing a nuisance and lost time.

67. Plaintiff is informed and believes that the text messages were sent by Defendant or its agent(s), with Defendant's permission, knowledge, control and for Defendant's economic benefit.

## CLASS ACTION ALLEGATIONS

68. Plaintiff brings this lawsuit as a class action on behalf of himself and all other similarly-situated persons (the "Class"), pursuant to the provisions of Rules 23(a), (b) (2), and (b) (3) of the Federal Rules of Civil Procedure.

69. The Classes are initially defined as follows:

**Express Written Consent Required Class**

All persons in the United States (1) to whom one or more telemarketing or advertising texts were initiated from SMS short code 73529, (2) to their cellular telephone number, (3) placed by or on behalf of EyeMed (4) using an automatic telephone dialing system, (5) on or after January __, 2016; and (6) without their prior express written consent.

**Express Consent Required Class**

All persons in the United states (1) to whom one or more text messages were initiated from SMS short code 73529, (2) to their cellular telephone number, (3) placed by or on behalf of EyeMed (4) using an automatic telephone dialing system, (5) on or after January __, 2016; and (6) without their prior express consent.

14

70. Not included in either Class is Defendant or any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; or the Judge assigned to this case, including his or her immediate family, or his or her staff. Plaintiff reserves the right to modify or amend the Class definitions during the course of this litigation.

71. This action is brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure Rule 23. The proposed Classes and Class Representative satisfy the criteria of Rule 23 as outlined below.

72. Plaintiff is a member of the proposed Classes.

73. **Numerosity—Federal Rules of Civil Procedure 23 (a) (1).** Defendant used automated technology that is capable of contacting thousands of people per day, so the potential Class members number in the hundreds or thousands, at least. Individual joinder of all members in the case would be impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. The proposed Class members should be identifiable from a review of Defendant's documents, marketing documents, phone records, contact lists, and other internal documents, including those possessed by nonparties.

74. **Commonality and Predominance—Federal Rules of Civil Procedure 23 (a) (2) and 23 (b) (3).** This action involves common questions of law and fact which predominate over any questions which may affect individual Class members, including, but not limited to:

a. Whether Defendant used an automatic telephone dialing system to text the cellular phone numbers of Plaintiff and others without the prior express consent of the called parties;

b. Whether Defendant used an automatic telephone dialing system to initiate text messages to cellular phone numbers without the prior express written consent of the called parties;

c. Whether Defendant's alleged conduct violated the Telephone Consumer Protection Act;

d. Whether Defendant's actions were knowing or willful and, if so, whether the Court should treble the statutory damages awarded to Plaintiff and other members of the Classes;

e. Whether Class members are entitled to statutory damages, equitable relief, exemplary damages, and/or other relief; and

f. The amount and nature of relief to be awarded to Plaintiff and Class members.

75. **Typicality—Federal Rules of Civil Procedure 23 (a) (3).** Plaintiff's claims are based on the same legal theories as all other Class members and therefore are typical of the claims of Class members. Plaintiff and the other Class members all received telephone calls to their cellular phones through the same or similar dialing system.

76. **Adequacy of Representation—Federal Rule of Civil Procedure 23 (a) (4).** The above-named Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Classes he seeks to represent. Plaintiff has retained counsel who are well-versed and experienced in complex litigation and class action litigation, and Plaintiff and counsel intend to vigorously prosecute this action on behalf of Plaintiff and the Classes. Plaintiff and his attorneys will fairly and adequately protect the interests of the Classes.

16

77.    **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23 (b) (2).** Injunctive and declaratory relief are appropriate because Defendant has acted or refused to act on grounds which are generally applicable to Plaintiff and Class members. Thus, final injunctive and declaratory relief, as described below, are appropriate with respect to the Classes.

78.    **Superiority—Federal Rule of Civil Procedure 23 (b) (3).** A class action is superior to any other available means for the fair and efficient adjudication of this action; no unusual difficulties are likely to be encountered in the management and litigation of this class action. When compared to the burden and expense required to litigate each Class member's claims, each individual Class member's claims are relatively small; thus, it would be impracticable for individual Class members to seek redress for Defendant's wrongful conduct. Even if individual Class members could afford individual suits, the court system could not. Adjudication of this matter by means of a class action ensures the most efficient and time- and cost-effective resolution by providing economy of scale, presents fewer management difficulties, and provides the benefit of a comprehensive supervision and a final adjudication by a single court.

79.    **Class Action Maintainable under Rule 23 (b) (3).** A class action is appropriate because common questions of law and fact predominate over any individual questions affecting only individual members. Class treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to

17

prosecute their common claims in a single form simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

80. **Class Action Maintainable Under Rule 23 (b) (2).** By continuing to contact individuals and businesses in violation of the TCPA, Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making declaratory relief an appropriate remedy for Plaintiff and the Classes.

## COUNT I – VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.* (On behalf of the Express Written Consent Required Class)

81. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein, and brings Count I on behalf of himself and the Express Written Consent Required Class.

82. The TCPA prohibits any person within the United States from initiating any telemarketing text message using an automated telephone dialing system to a cellular telephone number without first obtaining the recipient's express *written* consent. *See In re Rules and Regulations Implementing the TCPA of 1991*, 27 FCC Rcd. 1830, 1844 (2012); 47 C.F.R. § 64.1200 (f) (1), (12).

83. Upon information and belief Defendant did not obtain Plaintiff prior express written consent before Defendant initiated a telemarketing text message to Plaintiff's cellular phone number using an ATDS.

84.     Upon information and belief Defendant did not obtain the prior express written consent of the members of the Express Written Consent Required Class before Defendant initiated a telemarketing text message to Class members' cellular phone numbers using an ATDS.

85.     Defendant's acts and omissions alleged herein constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, as Defendant texted the cellular telephone numbers of Plaintiff and the other Class members using an ATDS for the purposes of telemarketing. *See* Exhibit A.

86.     Plaintiff and the other members of the Express Written Consent Required Class are entitled to an award of $500 in damages for each and every text Defendant made to their cellular telephone numbers using an ATDS or artificial or prerecorded voice in violation of the TCPA, pursuant to 47 U.S.C. § 227 (b) (3) (B).

87.     Plaintiff and members of the Express Written Consent Required Class are also entitled to, and do seek, injunctive relief prohibiting Defendant from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to cellular telephone numbers using an ATDS or artificial or prerecorded voice.

88.     Defendant's violations were knowing or willful.

89.     If the Court determines that Defendant's actions were knowing or willful, then Plaintiff requests that the Court increase the statutory damages up to three times the amount. 47 U.S.C. § 227 (b) (3).

**COUNT II – VIOLATION OF THE TELEPHONE
CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.***

*(On behalf of the Express Consent Required Class)*

90.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein, and brings Count I on behalf of himself and the Express Consent Required Class.

91.     The Telephone Consumer Protection Act provides:

It shall be unlawful for any person within the United States . . . to make any call . . . using any automatic telephone dialing system . . . to the telephone number assigned to a . . . cellular telephone service. 47 U.S.C. § 227 (b) (1) (A) (iii).

92.     Upon information and belief Defendant did not obtain Plaintiff prior express consent before Defendant initiated a text message to Plaintiff's cellular phone number using an ATDS.

93.     Upon information and belief Defendant did not obtain the prior express consent of the members of the Express Consent Required Class before Defendant initiated a text to Class members' cellular phone numbers using an ATDS.

94.     Defendant's acts and omissions alleged herein constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, as Defendant called the cellular telephone numbers of Plaintiff and the other Class members using an ATDS. *See* Exs. A, F.

95.     Plaintiff and the other members of the Express Consent Required Class are entitled to an award of $500 in damages for each text Defendant made to

20

their cellular telephone numbers using an ATDS or artificial or prerecorded voice in violation of the TCPA, pursuant to 47 U.S.C. § 227 (b) (3) (B).

96.     Plaintiff and members of the Express Consent Required Class are also entitled to, and do seek, injunctive relief prohibiting Defendant from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to cellular telephone numbers using an ATDS or artificial or prerecorded voice.

97.     Defendant's violations were knowing or willful.

98.     If the Court determines that Defendant's actions were knowing or willful, then Plaintiff requests that the Court increase the statutory damages up to three times the amount. 47 U.S.C. § 227 (b) (3).

WHEREFORE, Plaintiff, for himself and all Class members, requests the following relief:

    A.  Certification of the proposed Classes;

    B.  Appointment of Plaintiff as representative of the Classes;

    C.  Appointment of Plaintiff's counsel as counsel for the Classes;

    D.  An order awarding statutory damages of $500 per text message at issue pursuant to 47 U.S.C. § 227(b) (3) (B);

    E.  An order increasing those statutory damages up to three times ($1,500 per call at issue) pursuant to 47 U.S.C. § 227(b) (3) (C);

    F.  An order enjoining Defendant from engaging in the same or similar unlawful practices alleged herein;

    G.  An order awarding costs of suit;

    H.  Leave to amend this Complaint to conform to the evidence presented at trial and;

I. Orders granting any other relief this Honorable Court deems equitable, proper, and just.

## JURY DEMAND

99.  Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a

trial by jury of all claims in this Complaint so triable.

Date: February 14, 2020

Respectfully submitted,

BRANDON DILLER, individually and as the representative of a class of similarly-situated persons,

*/s/ Phillip A. Bock*

Phillip A. Bock
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle Street, Suite 1000
Chicago, IL 60602
Tel: (312) 658-5500
service@classlawyers.com